**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| Sun Commodities, Inc.,<br><br> Plaintiff and Counter Defendant,<br><br>v.<br><br>Island Fresh de Puerto Rico, Inc. et al,<br><br> Defendant, Counter-Plaintiffs,<br>  and Third-Party Plaintiffs. | Civil. No. 20-cv-1236(GMM)<br><br>RE: PACA, 7 U.S.C. §§499, et seq. |

**OPINION AND ORDER**

Before the Court is Plaintiff Sun Commodities, Inc.'s ("Sun" or "Counter-Defendants") *Motion for Summary Judgment to Dismiss Island Fresh's Counterclaim* ("Motion for Summary Judgment"). (Docket No. 442). Sun challenges the Counterclaim filed at Docket No. 54 by Island Fresh de Puerto Rico, Inc. ("Island Fresh") and Jorge Mayendía Valdés ("Mayendía") (collectively "Counter-Plaintiffs"). For the reasons provided herein, the Court **GRANTS** Sun's Motion for Summary Judgment.

**I. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND**

This suit arose from the breakdown in the commercial relationship between Sun and Island. From around December 2019 through April of 2020, Sun sold fresh produce to Island, which is owned by Mayendía. (Docket Nos. 30; 30-1). Sun alleges that Island Fresh never paid Sun for the accepted produce, despite having sold

Civil No. 20-1236(GMM)
Page -2-

it to a third party for consideration. (Docket No. 30 at 4). Sun further contends that Island, at Mayendía's direction, then transferred the profits it had made on the sold produce, which Sun argues qualified as Perishable Agricultural Commodities Act ("PACA") Trust Assets, to JC Brokerage, Inc. ("JC Brokerage"), another company owned by Mayendía. (Id. at 6).

On May 21, 2020, Sun initiated this suit against Island Fresh and its owner Mayendía. It alleged violations of PACA at 7 U.S.C. § 499c(e) seeking payment of $ 1,225,463.25. (Docket No. 1). Then, on June 5, 2020, the Court granted a preliminary injunction against Island. It ordered Co-Defendants to pay Sun the PACA trust assets it owed in the amount of $950,000.00. (Docket No. 27). Sun filed its *First Amended Complaint* ("Complaint") on June 17, 2020, adding JC Brokerage as a defendant and including additional allegations that Island Fresh transferred its PACA trust assets to JC Brokerage. (Docket No. 30).

On June 29, 2020, Co-Defendants filed their *Answer to the First Amended Complaint* ("Answer") and Counterclaim against Sun. (Docket No. 54). Therein, Counter-Plaintiffs assert that Island Fresh was a joint venture between Mayendía and executives at Sun. The Counterclaim avers that Mayendía, in reliance of discussions he had with Sun executives, fronted the money for the establishment of Island Fresh and gave Sun executives the authority to make

Civil No. 20-1236(GMM)
Page -3-

decisions on Island's behalf. Counter-Plaintiffs thus brought claims for collection of monies and tortious interference, and sought loss of goodwill damages, compensatory damages, and attorney's fees. (Id.).

The Court extended the issued Preliminary Injunction to Mayendía and JC Brokerage on June 30, 2020. (Docket No. 59). The First Circuit affirmed the District Court's injunction on August 15, 2023. (Docket No. 399). *See* Sun Commodities, Inc. v. Island Fresh de Puerto Rico, Inc., No. 20-1731, 2023 WL 7474486, at *1 (1st Cir. Aug. 14, 2023).

On March 1, 2021, Sun filed its *Motion for Summary Judgment to Dismiss Island Fresh's Counterclaim*. (Docket No. 255). The Court denied the motion without prejudice as moot on September 30, 2022. (Docket Nos. 383). On February 1, 2024, and with leave of the Court, Sun refiled its Motion for Summary Judgment. (Docket No. 442). Counter-Plaintiffs entered their *Opposition to Motion for Summary Judgment* on February 19, 2024. (Docket Nos. 456; 457). The Court now considers Sun's refiled Motion for Summary Judgment.

## II.  SUMMARY JUDGMENT STANDARD

A.   Federal Rule of Civil Procedure Rule 56

Federal Rule of Civil Procedure Rule 56 provides the standard for summary judgement. "To prevail at summary judgment, a movant must demonstrate that 'there is no genuine dispute as to any

material fact' and [that they are] 'entitled to judgment as a matter of law.'" <u>Dixon-Tribou v. McDonough</u>, 86 F.4th 453, 458 (1st Cir. 2023) (internal citations omitted); *see also* Fed. R. Civ. P. 56(a); <u>Feliciano-Muñoz v. Rebarber-Ocasio</u>, 970 F.3d 53, 62 (1st Cir. 2020); <u>González-Cabán v. JR Seafood Inc.</u>, 48 F.4th 10, 14 (1st Cir. 2022). "The movant must [first] adumbrate 'an absence of evidence to support the nonmoving party's case.'" <u>Pleasantdale Condominiums, LLC v. Wakefield</u>, 37 F.4th 728, 733 (1st Cir. 2022) (internal citations omitted); *see also* <u>Brennan v. Hendrigan</u>, 888 F.2d 189, 191 (1st Cir. 1989); <u>Cellotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986). At summary judgment, "the judge's function is not himself [or herself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249 (1986); *see also* <u>Dusel v. Factory Mut. Ins. Co.</u>, 52 F.4th 495, 503 (1st Cir. 2022).

"A dispute is 'genuine' if the evidence about the fact is such that a reasonable jury could resolve the point in favor of the non-moving party." <u>Johnson v. U. of P.R.</u>, 714 F.3d 48, 52 (1st Cir. 2013); <u>Prescott v. Higgins</u>, 538 F.3d 32, 40 (1st Cir. 2008) (*citing* <u>Thompson v. Coca-Cola Co.</u>, 522 F.3d 168, 175 (1st Cir. 2008)). A fact is material if it has the potential "to affect the outcome of the suit under governing law." <u>Sands v. Ridefilm Corp.</u>,

212 F.3d 657, 660-661 (1st Cir, 2000) (*citing* Liberty Lobby, Inc*.*, 477 U.S. at 247-248); Maymi v. P.R. Ports Auth*.*, 515 F.3d 20, 25 (1st Cir. 2008)). In granting summary judgment, the Court must conclude that "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" demonstrate that the movant is entitled to judgment as a matter of law. Lugo v. Sociedad Española de Auxilio Mutuo y Beneficencia de Puerto Rico, 2023 U.S. Dist. LEXIS 212418, at *4 (D.P.R. 2023) (internal citations omitted).

At summary judgment, the movant bears the burden of proving that there is a lack of material facts supporting the non-movant's case. *See* Cellotex Corp., 477 U.S. at 325; *see also* Ocasio-Hernández v. Fortuño-Burset, 777 F.3d 1, 4-5 (1st Cir. 2015); Vega-Rodriguez v. Puerto Rico Tel. Co., 110 F.3d 174, 178 (1st Cir. 1997); Lugo, 2023 U.S. Dist. LEXIS 212418, at *4. "Once the moving party has properly supported [its] motion for summary judgment, the burden shifts to the nonmoving party, with respect to each issue on which [it] has the burden of proof, to demonstrate that a trier of fact reasonably could find in [its] favor." Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir.

2000) (*quoting* DeNovellis v. Shalala, 124 F.3d 298, 306 (1st Cir. 1997)). In considering a motion for summary judgment, the court must consider "in the light most flattering to the non-movant and indulge all reasonable inferences in the party's favor." Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994).

B.   Local Rule 56

Local Rule 56 also applies to motions for summary judgment. *See* Local Civ. R. 56. "The purpose of this anti-ferret rule is to require the parties to focus the district court's attention on what is, and what is not, genuinely controverted. Otherwise, the parties would improperly shift the burden of organizing the evidence presented in a given case to the district court." Adames v. Dorado Health Inc., 2023 U.S. Dist. LEXIS 200299, at *9 (D.P.R. 2023) (*quoting* Mariani-Colon v. Dep't of Homeland Sec., 511 F.3d 216, 219 (1st Cir. 2007)).

Local Rule 56(c) provides:

> A party opposing a motion for summary judgment shall submit with its opposition a separate, short, and concise statement of material facts. The opposing statement shall admit, deny or qualify the facts . . . by reference to each numbered paragraph of the moving party's statement of material facts. Unless a fact is admitted, the opposing statement shall support each denial or qualification by a record citation as required by this rule. The opposing statement may contain in a separate section additional facts, set forth in separate numbered paragraphs and supported by a record citation as required by subsection (e) of this rule.

Local Civ. R. 56(c).

"Under Local Rule 56, a district court is free, in the exercise of its sound discretion, to accept the moving party's facts as stated. . .when the statements contained in the movant's Statement of Uncontested Facts. . .are not properly controverted." López-Hernández v. Terumo P.R. LLC, 64 F.4th 22, 26 (1st Cir. 2023); *see also* Ramirez-Rivera v. DeJoy, No. 3:21-CV-01158-WGY, 2023 WL 6168223, at *2 (D.P.R. Sept. 22, 2023)("The First Circuit's repeated admonition on this issue in the last few years, places the Puerto Rico federal bar on clear notice that compliance with Local Rule 56 is a mandate, not a suggestion.").

### III. UNCONTESTED FACTS

After examining the record and disregarding any legal arguments and conclusory statements in the Parties' submitted facts, the Court finds the following material facts to be undisputed and supported by the tendered exhibits.

1. Ruth Bernal ("Bernal") is the Chief Financial Officer of Sun. (Docket Nos. 442-1 ¶ 1; 446-4 ¶ 127; 449-4 ¶ 127; 456 ¶ 1).

2. Bernal has never been an employee, officer, director, or owner of Island. (Docket Nos. 442-1 ¶ 2; 456 ¶ 2).

3. Walter Pérez ("Pérez") is an Executive Vice President at Sun. (Docket Nos. 442-1 ¶ 4; 446 ¶ 1; 449-4 ¶ 1; 456 ¶ 4).

4. Mike Leslie ("Leslie") is a partial owner and CEO of Sun. (Docket Nos. 446 ¶¶ 103, 128; 449-4 ¶¶ 103, 128).

5. Pérez reports to Leslie. (Docket Nos. 446 ¶ 104; 449-1 ¶ 104).

6. Bernal reported to Leslie regarding the situation with Island Fresh from May or June of 2019 to May or June of 2020. (Docket Nos. 446 ¶ 129; 446-50 at 91; 446-4 ¶ 129).

7. Pérez oversaw Sun's accounts in Puerto Rico. (Docket Nos. 446 ¶ 136; 446-50 at 23; 449-4 ¶ 136).

8. Mayendía was Pérez's personal friend and they had been friends for approximately 32 years. (Docket Nos. 446 ¶¶ 8-9; 446-1 at 24; 449-4 ¶¶ 8-9).

9. Sun was experiencing problems with AgroProduce, the company that handled Sun's cruise ship operations in Puerto Rico. Given these challenges, Pérez became aware of the possibility of entering an agreement with another Puerto Rican company, that would sell produce to cruise ships. (Docket Nos. 446 ¶¶ 17, 50; 446-1 at 37-38, 91; 449-4 ¶¶ 17, 50).

10. Sun "scanned" Puerto Rico to see who might be able to create such a cruise operation and approached Mayendía. (Docket Nos. 446 ¶ 18; 446-1 at 38; 449-4 ¶ 18).

11. Leslie met with Mayendía and Pérez to discuss doing the cruise business in Puerto Rico. (Docket Nos. 446 ¶ 106; 449-4 ¶ 106).

12. Leslie, Mayendía, and Pérez discussed in abstract how such an operation might run should they go into business together, and at that time percentages were discussed. (Docket Nos. 446 ¶ 22; 446-1 at 42-44; 449-4 ¶ 22).

13. Luis Rivera ("Rivera"), who previously worked for AgroProduce, was hired by Island Fresh to manage the cruise operations. (Docket Nos. 446 ¶¶ 2-3; 446-1 at 18-19; 449-4 ¶¶ 2-3).

14. During the month of April 2018, Pérez and Mayendía, coordinated and eventually met with a representative of BDO (an accounting consulting firm) to discuss tax

scenarios for the new company. (Docket Nos. 446 ¶ 52; 449-4 ¶ 52).

15. Pérez and Mayendía interviewed the accounting firm (MEC) that Island Fresh eventually hired to do its accounting. (Docket Nos. 446 ¶ 30; 446-1 at 52-53; 449-4 ¶ 30).

16. On April 2, 2018 at 1:41 p.m., Mayendía e-mailed Pérez stating:

> We need the following[:]
>
> The corporation was registered and we are given some days to make it official before completing it with the following[:]
>
> Zip code of the corp. physical and postal
>
> Name of the shareholders and the percentages of the corp[oration]
> Postal and physical address of the shareholders
> E-mail of the shareholders
>
> President
> Vice-President
> Treasurer
> Secretary
> Assistant Secretary
>
> [Mayendía]

(Docket Nos. 446 ¶ 38; 446-8; 449-4 ¶ 38).

17. On April 3, 2018, at 6:39 am, Mayendía sent Pérez an e-mail with the subject line "Agro customer list" which stated:

> G[ood] morning [sic] morning. Important if you don't have access then that Luis [Rivera] get you the customer list. Before leaving. We need that to serve as a guide for us. [Mayendía].

18. On April 4, 2018, Pérez sent Mayendía, via text message pictures of a confidential agreement between AgroProduce and Pueblo Supermarkets for the sale of produce. The agreement was to last from April 1, 2018 to April 1,

Civil No. 20-1236(GMM)
Page -10-

2019. (Docket Nos. 446 ¶ 45; 446-1 at 82-85; 446-16; 449-4 ¶ 45).

19. On April 6, 2018, Pérez e-mailed Mayendía stating:

    "[Mayendía], the idea is a good one but we cannot begin until we are ready to get the Agro[Produce] boats out. We need to have all the other details resolved."

    (Docket Nos. 446 ¶ 43; 446-13; 449-4 ¶ 43).

20. Sun put into place a strategy to help Mayendía grow Island's business to compete with Pérez and AgroProduce.

    (Docket Nos. 446 ¶ 58; 446-1 at 105; 449-4 ¶ 58).

21. On December 3, 2018 at 4:19 pm, Pérez sent Rivera an e-mail at his personal e-mail address, luisriveramiranda@yahoo.com. The e-mail was titled "D&B". "D&B" stands for Dun & Bradsheet, a credit service out of Wall Street. The e-mail stated:

    > [Rivera], this is the information.
    > Owner: Jorge Mayendía, 100%.
    > Legal name of the company:
    > Island Fresh de Puerto Rico, Inc.
    > Phone: 787-777-1888.
    > Dirección fisica
    > Calle 3, Lote 10-13. . .

    (Docket Nos. 446 ¶¶ 65-66, 68-69; 446-33 at 1; 449-4 ¶¶ 65-66, 68-69).

22. On April 22, 2019, Mayendía and Pérez had the following text exchange:

    Mayendía wrote:

    > The amount that is owed to [sic] me [is] approx[imately]...    Between    [Rivera], attorney['s costs], cruise ships, office arrangements, opening bank accounts. Up to now that have not been finished everything is 34,800.

Civil No. 20-1236(GMM)
Page -11-

Pérez responded:

> Ok. I'll pass it along to [Leslie]. I need you
> to prepare all the receipts and documents that
> collaborate those expenses because Mike
> [Leslie] is going to ask for them.

(Docket Nos. 446 ¶¶ 80-81; 446-38; 449-4 ¶¶ 80-81).

23. On April 27, 2019, Byron Miranda ("Miranda"), Sun's
    Comptroller who reports to Bernal, e-mailed Pérez
    stating:

> [Pérez],
> I don't know if Jason sent you the first set
> of invoices, but here they are. We automated
> it so that the invoices will be e-mailed when
> billed.
> Thanks.
> [Miranda].

(Docket Nos. 446 ¶¶ 84, 130; 446-41; 449-4 ¶¶ 84, 130).

24. On June 1, 2019, Mayendía texted Pérez stating:

> You know that I haven't wanted to or tried to
> bother you at this time. But I need the money
> urgently. Remind the partner that when I began
> last year to get money out of the [JC]
> [Brokerage] I never had any objections neither
> did I need projections. Now the [JC Brokerage]
> circle is closing on me and also in island. I
> have customers that logically kept the jc
> [brokerage] checks in the drawers for [deposit
> at] a later date. And I need to pay suppliers
> and expenses so that we don't have any
> problems. Trust toward me reaches up to a
> point. You know that. My buttons are already
> being pushed because I am also not buying from
> them and they know that they are not my bank.
> I already had to take from [Island Fresh's]
> operational [funds] to pay cruise ship bills.
> I need the money. [Leslie] has to give it to
> me because first we know that its mine. Second

> I feel squeezed by so many bills and I don't
> even know from where else to get it. I am sorry
> to write you this now but I can't wait anymore
> for a partner who knows he owes me. . .

(Docket Nos. 446 ¶ 90; 446-43; 449-4 ¶ 90).

25. Since June of 2019, Bernal received weekly reports,
    weekly bank statements, balance sheet statements, PNL's,
    cash positions, account receivables and account payables
    agings, among others. (Docket Nos. 446 ¶ 143; 446-54 at
    109; 449-4 ¶ 143).

26. At some point in time during the summer of 2019, Bernal
    began receiving daily bank statements from Island.
    (Docket Nos. 446 ¶ 144; 446-54 at 108-109; 449-4 ¶ 144).

27. On June 11, 2019, Pérez e-mailed Miranda:

> Hello [Miranda].
>
> We had a conference with [Bernal] and Maria
> Elena yesterday for about an hour. Maria Elena
> is in charge of the accounting firm (MEC) that
> we hired to do our books. I'm sure Ruth will
> fill you in on all the discussions that we
> had. This morning Maria Elena will send
> [Bernal] all the documents, paper work and
> other requests that [Bernal] made so that we
> can get the wire transfer that we so
> desperately need to make payroll and pay the
> truck drivers tomorrow. As well as reimburse
> the out of pocket money that [Mayendía] put
> into Island Fresh and pay the accounting firm
> as well.
>
> Thank you for your help.
>
> [Pérez].

(Docket Nos. 446 ¶ 92; 446-45 at 2-3; 449-4 ¶ 92).

28. On July 17, 2019 at 4:25, Bernal e-mailed Island's
    accounting firm advising that money be moved from

Island's operative account to Island's cruise ship account. (Docket Nos. 446 ¶ 140; 446-54 at 99-100; 446-58; 449-4 ¶ 140).

29. Sun does not instruct clients to make intra account transactions and only did it with Island. (Docket Nos. 446 ¶ 141; 446-54 at 100-103; 449-4 ¶ 141).

30. Island's invoices for the cruise ship accounts were prepared by Sun in Florida. (Docket Nos. 446 ¶¶ 85, 139; 446-1 at 135; 449-4 ¶¶ 85, 139).

31. On April 1, 2020, Bernal requested Island Fresh to pay $205,478.78 from Island's operational account. Also, Bernal asked Island Fresh to transfer $100,000.00 from Island's eggs account to its operational account. (Docket Nos. 446 ¶ 154; 449-4 ¶ 154; 262-49).

32. On April 8, 2020, Bernal requested that Island Fresh pay $153,112.54 from its cruise account for invoices already paid by Royal Caribbean Cruises as per an attached invoice list. (Docket Nos. 446 ¶ 155; 449-4 ¶ 155; 262-50).

33. On April 8, 2020, Bernal requested that Island Fresh pay $183,204.50 from its operational account as per an attached invoice list. (Docket Nos. 446 ¶ 156; 449-4 ¶ 156; 262-51).

34. There was never a written agreement between Mayendía, Leslie, and Pérez to be "joint venture partners" of Island Fresh. (Docket Nos. 447 at 11; 449-4 at 42 ¶ 1).

35. There was never a written agreement that Mayendía, Leslie, and Pérez were "owners" of Island Fresh. (Docket Nos. 447 at 11; 449-4 at 42 ¶ 2).

36. In March of 2020, Pérez called Troy Havanga ("Havanga"), an employee at Red Isle Produce Co., Ltd. ("Red Isle"), a Canadian food supplier, and asked him whether Red Isle was still doing business with Island Fresh. (Docket Nos. 442-2 at 2 ¶ 5; 457 at 16).

37. On June 26, 2020, Sun's attorney, Robert E. Goldman ("Goldman") called Havanga at Red Island Produce Co., Ltd., and told him that Goldman was an attorney who had filed a lawsuit on behalf of Sun against Island. Goldman

asked Havanga whether Sun owed Red Isle any money. Havanga told Goldman that he did not want to answer Goldman's question. Goldman was unaware of whether Island Fresh had a contract with either Havanga or Red Isle when he called Havanga. (Docket Nos. 442-2 at 3 ¶ 4; 457 at 18).

38. On July 7, 2020, Sun served its *First Set of Interrogatories* to Island Fresh. (Docket Nos. 442-1 ¶ 9; 456 ¶ 9).

## IV.  DISCUSSION

### A.  Collection of Monies

The Counterclaim argues Sun, through Bernal and Pérez, made poor monetary decisions on behalf of Island Fresh that caused Counter-Plaintiffs to lose: $71,400.00 in unapplied credits; $135,000.00 in commissions; $150,000.00 in reimbursements; $3,000,000.00 for loss of goodwill; and $350,000.00 for loss of merchandise. (Docket No. 54 at 32).  As such, Counter-Plaintiffs bring a collection of monies cause of action seeking to recoup the losses they incurred because of Sun's acts that allegedly led to those same losses.

In its Motion for Summary Judgment, Sun argues that collection of monies is not a recognized cause of action. Sun also contends that its employees and representatives lacked the authority to make any decisions on behalf of Island, and thus any decisions Sun employees may have made would not have caused Counter-Plaintiffs any injury justifying a collection of monies cause of action. Moreover, Sun avers that Counter-Plaintiffs have failed to

indicate what "questionable financial decisions" Sun's employees allegedly made that cause Counter-Plaintiffs' reported resulting losses. As such, Sun finds that there are no evidentiary grounds for Counter-Plaintiffs collection of monies claim.

In response, Counter-Plaintiffs cite a range of cases demonstrating that a collection of monies claim was a valid cause of action under Puerto Rico law. Counter-Plaintiffs reassert that Island Fresh was a joint venture between Sun executives and Mayendía. They state that Pérez made decisions on behalf of Island Fresh including hiring Island's accounting firm. Moreover, Counter-Plaintiffs state that Bernal controlled Island's finances, directed intra account transfers between Island's bank accounts, and hired Island's accountant. Counter-Plaintiffs go on to state that "[i]t was Ms. Bernal's decisions, together with those of Mr. Walter Pérez, that took Island Fresh's operation from a promising one to a disastrous one. . .The actions resulted in monies owed to […]Mayendía and Island Fresh which are well pleaded in the counterclaim." (Docket No. 457 at 15).

"For a collection of monies claim under Puerto Rico law, '[p]laintiff need only prove that a valid debt exists, that it has not been paid, that the plaintiff is the creditor and the defendants his debtors.'" Concilio Fuente de Agua Viva, Inc. v. Ortiz-Hernández, Civil No. 22-1206 (RAM), 2023 U.S. Dist. LEXIS

14615, at *12 (D.P.R. 2023) (*quoting* Citibank, N.A. v. R2 Adver., 2013 U.S. Dist. LEXIS 205406, 2013 WL 12234280, at *7 (D.P.R. 2013) (internal citations omitted)); *see also* Chi. Title Ins. Co. v. Segui Sotomayor, 394 F.Supp.2d 452, 460 (D.P.R. 2005) ("Any given debt can give rise to a personal action for collection of monies which may eventually be executed upon personal or any other property of the debtor."); Concilio Fuente de Agua Viva, Inc. v. Ortiz-Hernández, 2023 U.S. Dist. LEXIS at *12.

To succeed in a collection of monies claim, Counter-Plaintiffs must demonstrate that they hold a valid debt that Sun is required to repay. Thus, Counter-Plaintiffs must have factual evidence supporting a finding that Sun promised to pay or reimburse Island Fresh and Mayendía for any losses allegedly incurred due to Sun employees' poor financial decisions. The Counterclaim simply states that "SUN's questionable decisions as the decision maker in relation to Island Fresh finances, have made Island Fresh and Mr. Mayendía loose[sic] a considerable amount of money" and as such Counter-Plaintiffs are entitled to recoup their incurred losses through a collection of monies cause of action. (Docket No. 54 at 32). But even, assuming *arguendo*, that Pérez and Bernal made financial decisions on behalf of Sun that caused damages to Counter-Plaintiffs, such damages are not equivalent to a valid debt under a collection of monies claim.

Notably, Counter-Plaintiffs' claim is distinguishable from the collection of monies cases named in their response to Sun's Motion for Summary Judgment. The cited cases contained incidences where the adversarial Parties either acknowledged the existence of a debt or obligation, or there was a statutory or contractual basis for the disputed debt. *See e.g.* FDIC v. Sunrise Partneres II, S.E., Civil No. 10-1635 (FAB/CVR), 2012 U.S. Dist. LEXIS 203861, at *2 (D.P.R. 2012)(a collection of monies action brought under a construction loan agreement); Peerless Oil & Chems., Inc. v. Empresas Hernández Ledesma, Inc., Civil No. 17-1651 (CCC/BJM), 2018 U.S. Dist. LEXIS 249423, at *4-5 (D.P.R. Nov. 29, 2018)(a collection of monies action brought under a supply agreement between the parties); Cmi Capital Mkt. Inv., L.L.C. v. Municipality of Bayamon, 239 F.R.D. 293, 294 (D.P.R. 2006)(seeking to collect payment based on three finance lease agreements); Condado 3 CFL, LLC v. Acevedo-Kuinlam, Civil No. 18-1359 (MDM), 2019 U.S. Dist. LEXIS 54734, at *13 (D.P.R. March 29, 2019) (requesting collection of monies under a mortgage note); Colorado Food Prod., Inc. v. Bardon Font, 330 F.Supp.2d 29, 31-32 (D.P.R. 2004)(a collection of monies action based on billed invoices for unpaid meat shipments and a subsequent settlement conference in which defendants agreed

Civil No. 20-1236(GMM)
Page -18-

to enter summary judgment against one of the named co-defendants for some of the invoices.).[1]

There is no evidence in the instant case that Sun promised to pay or cover any of Island's losses allegedly caused by Sun employees. As such, Counter-Plaintiffs have failed to demonstrate that a valid debt exists upon which a collection of monies cause of action can be based. Thus, the Court grants Sun summary judgment on the Counterclaim's collection of monies count.

B.   Tortious Interference

Counter-Plaintiffs contend that "since February 2020, [Sun], through his employees and/or representatives has willfully and deliberately engaged in tortuously interfere with Island Fresh and […] Mayendía's suppliers and clients, with whom they have

---

[1] *See also* CitiMortgage, Inc. v. Rivera-Anabitate, 39 F.Supp.3d 152 (D.P.R. 2014)(suing for collection of monies under a mortgage note); Detersol, S.A. de C.V. v. Benso Corp., Civil No. 11-1341 (MEL), 2011 WL 4371917, at *1 (D.P.R. Sept. 19, 2011) (sued for unpaid dues on invoices under a non-exclusive sales and distribution agreement); P.L. Servs. LP v. Millennium Const., Inc., 328 F.Supp.2d 245, 247 (D.P.R. 2004) (bringing a collection of monies action under a Resource Funding Group Agreement); F.D.I.C. v. James T. Barnes of Puerto Rico, Inc., 834 F.Supp. 543 (D.P.R. 1993) (seeking repayment of monies due on note and foreclosure of mortgage); DLJ Mortg. Cap., Inc. v. Vazquez Perez, Civil No. 16-2069 (BJM), 2021 WL 3668241, at *1 (D.P.R. Aug. 18, 2021)(bringing a collection of monies action to collect on a mortgage note); Bautista Cayman Asset Co. v. Vilarino-Rodriguez, Civil No. 16-3070 (PG), 2018 WL 6422731, at *3 (D.P.R. Dec. 5, 2018)(" Bautista is undisputedly entitled to recover the amounts owed in the promissory note and guaranteed in the mortgage notes"); Gomes Fernandes v. Gomes Fernandes, Civil No. 18-1176 (DRD), 2019 WL 8226905, at *1 (D.P.R. Dec. 18, 2019) ("The collection of monies stems from several private transactions between S.D. Gomes and another party, where Defendant borrowed a sum of money from the Gomes-Fernandes and executed Promissory Notes whereby he promised to each of them, to pay the amounts owed, plus interest, until the complete payment of each promissory note"); Roosevelt Cayman Asset Co. II v. Mercado, 259 F.Supp.3d 1, 2 (D.P.R. 2016)(seeking repayment of amounts due under a mortgage note).

contracts, warning them that Mr. Mayendía and Island Fresh have been sued and that they are in a dire financial condition." (Docket No. 54 at 33). Island Fresh and Mayendía further state that they have incurred a loss of at least $3 million because of the alleged tortious interference. The one example Counter-Plaintiffs gave to substantiate their tortious interference cause of action stated that Sun representatives made several calls to "Mr. Troy Havenga, a Canadian food supplier who has business with Cross-Plaintiffs (Island Fresh and Mayendía). This not only illegally interferes with Cross-Plaintiffs (Island Fresh and Mayendía) business relationships in the middle of a Generation defining Pandemic, but also greatly harms both Island Fresh and Mr. Mayendía's Goodwill." (Docket No. 54 at 31).

Sun contends that Island Fresh cannot prove the elements of their tortious interference claim and thus, the Court should grant summary judgment on this cause of action. Specifically, Sun states that the Counter-Plaintiffs failed to provide certain requisite material information, including when a wrongful statement was made, who made the wrongful statement, or what was wrongful about an unnamed representative of SUN telling someone "the legal status of the company, its financial condition, and dire operational outlook." (Docket No. 442 at 6). Moreover, while Sun admits that its representative, Pérez, spoke to Island's alleged identified

supplier (Red Isle) and identified customer (Plaza Loiza), Sun claims Pérez had no knowledge that the named supplier and customer had a contract with Island. (Id. at 7).

In their response, Island Fresh and Mayendía admit that they do not "have a smoking gun" to indicate that Pérez tortiously interfered with their contract with Red Isle when speaking with Havanga. However, they contend that circumstantial fact evidence supports that Pérez knew Island Fresh and Red Isle had a contract. Specifically, Counter-Plaintiffs emphasize that Pérez oversaw Sun's Island Fresh and Agro Produce accounts, that Sun managed Island's billing, and that it would be farfetched for Pérez and Sun's Counsel, Goldman, to both call Red Isle if they lacked knowledge that Red Isle was in business with Island. Counter-Plaintiffs also state that Sun knew of Island's relationship with Plaza Loiza citing an October 31, 2019 e-mail, in which "PLAZA LOISA" was listed on an invoice sent from Judith Suárez to Bernal and carbon copying Pérez and Mayendía. (Docket No. 450-2). The e-mail, according to Counter-Defendants, demonstrates that Pérez was aware that Island Fresh and Plaza Loiza were in business together.

The elements of a tortious interference claim are: 1) the existence of a contract; 2) that the interfering party acted with intent and knowledge of the existence of a contract; 3) that plaintiff suffered damages; and 4) that there exists a causal link

between the injury and the interfering party's actions. *See* <u>New Commc'n. Wireless Servs. v. Sprintcom, Inc.</u>, 287 F.3d 1, 9 (1st Cir. 2002) (*citing* <u>Gen. Office Prods. Corp. v. A.M. Capen's. Sons, Inc.</u>, 115 P.R. Off. Trans. 727, 734, 115 P.R. Dec. 553 (1984)). Even weighing the evidence in Counter-Plaintiffs' favor and if Pérez had knowledge of a contract between Island Fresh and Red Isle, the Court finds that the record lacks evidence to establish other essential elements of Island Fresh and Mayendía 's tortious interference claim.

The Supreme Court of Puerto Rico has stated that to establish the first element of a tortious interference claim a party must demonstrate that there is a fixed time period in the contract. <u>A.M. Capen's. Co., Inc. v. Am. Trading & Prod. Corp.</u>, 200 F.Supp.2d 34, 43 (D.P.R. 2002) (discussing the Supreme Court of Puerto Rico's conclusion in <u>Dolphin Int'l. of P.R. v. Ryder Truck Lines</u>, 127 P.R. Dec. 869, 882-83, 1991 Juris P.R. No. 13, 1991 WL 735928 (P.R. Jan. 31, 1991) that at-will contracts lacking an expiration date cannot create a tortious interference cause of action); *see also* <u>Leopoldo Fontanillas, Inc. v. Luis Ayala Colón Sucrs., Inc.</u>, 283 F.Supp.2d 579, 588 (D.P.R. 2003); <u>Tilsor v. Oracle Caribbean, Inc.</u>, Civil No. 19-1875 (PAD), 2022 U.S. Dist. LEXIS 246070, at *27 (D.P.R. Sept. 30, 2022) (*citing* <u>R.R. Isla Verde Hotel Corp. v. Howard Johnson Int'l, Inc.</u>, 121 Fed.Appx. 870, 871 (1st Cir. 2005))

("Existence of a contract for a fixed period of time is indispensable."). "If what is affected is a profitable financial relationship in the absence of a contract the [tortious interference] action does not lie." Tilsor, 2022 U.S. Dist. LEXIS 246070, at *27.

The Court reviewed the record and the Parties' submitted exhibits and found nothing demonstrating the existence of a term contract between Island Fresh and Red Isle or Island Fresh and Plaza Loiza. Notably, in response to Sun's *Fourth Document request*, Island Fresh denied having possession of any documents "created after June 1, 2020, which reflect communications between you and anyone who works for Red Isle Co. Ltd. Regarding produce, including money owed for produce." (Docket No. 442-2 at 89). This Court has previously dismissed a tortious interference claim where a plaintiff similarly failed to "offer any clues as to when the contract began, when it was in effect, or the agreed-upon termination date—or lack thereof. Thus, no liability could lie, as the underlying contract, as alleged, 'has no fixed period of time.'" Burckhart Search Group, Inc. v. Doral Fin. Corp., Civil no. 11-1565 (JAF), 2011 U.S. Dist. LEXIS 138720, at *28 (D.P.R. Nov. 30, 2011) (*citing* A.M. Capen's Co., 200 F.Supp.2d at 48).

In a Rule 56 motion, once a movant has demonstrated a lack of evidence supporting a claim under Rule 56(e), "[t]he non-movant

must 'produce specific facts, in suitable evidentiary form' sufficient to limn a trial-worthy issue. . .Failure to do so allows the summary judgment engine to operate at full throttle." Casco Sales Co. v. Maruyama U.S., Inc., 901 F.Supp.2d 311, 316 (D.P.R. 2012) (internal citations omitted). "Conjectural allegations, conclusory assertions, and inconsequential evidence" are insufficient to a non-movant's burden in defeating a summary judgment motion. *See* Roger Edwards, LLC v. Fiddes & Sons, Ltd., 387 F.3d 90, 94 (1st Cir. 2004). Here, Counter-Plaintiffs presented no evidence in the record of a contract, much less a clear term contract, between Island Fresh and the named customers and suppliers. Thus, the Court grants Sun summary judgment and dismisses Counter-Plaintiffs' tortious interference claim.

C.   Loss of Goodwill

In their Counterclaim, Counter-Plaintiffs contend that Sun, through its employees and representatives, disparaged Island Fresh and Mayendía causing severe damage to their goodwill and reputation and causing a harm of no less than $5 million. (Docket No. 54 at 34). Specifically, Counter-Plaintiffs stress that Sun's actions tainted their reputation in the food industry, a reputation that Mayendía spent the past 40 years developing. (Id. at 24). In its Motion for Summary Judgment, Sun states that loss of goodwill is a remedy and not an independent cause of action. In response

Counter-Plaintiffs allege that when Pérez called Havanga and told him that Island Fresh owed Sun money, that the call was either an indication that Pérez knew of a contract between Island Fresh and Red Isle or was just "plain disparagement on [the] part of Sun's VP (Pérez) that goes against Island Fresh and Mayendía's Goodwill." (Docket No. 457 at 17).

In Puerto Rico, loss of goodwill is not a cause of action in and of itself but rather, a damages claim through which a harmed party can seek recovery. *See e.g.* <u>P.R. Oil Co. v. Dayco Prods.</u>, 2005 PR Sup. LEXIS 39, 164 D.P.R. 486, ("Goodwill is one of the factors to be considered when assessing damages in an Act No. 75 action."); <u>Goya de P.R., Inc. v. Rowland Coffee Roasters</u>, Civil No. 01-1119 (DRD), 2004 U.S. Dist. LEXIS 30649, at *21 (D.P.R. 2004) ("Loss of goodwill together with the loss of profits are the elements to be considered in calculating damages in a Law 75 claim."); <u>Perfumania, Inc. v. Perfulandia, Inc.</u>, Civil No. 02-2733 (CCC), 2004 U.S. Dist. LEXIS 15090, at *51 (D.P.R. 2004)("[t]o be entitled to receive monetary relief based upon its damages, the plaintiff must show actual harm, which may be lost sales or loss of good will."). To recoup any damages for Counter-Plaintiffs' purported loss of goodwill, they need not only identify a violation of some statute or legal right, but they must also prove the loss of goodwill with "reasonable certainty and not with mere

speculations." <u>Rafael Refojos & Assoc. v. Ideal Auto.</u>, Civil No. 03-1797 (DRD), 2006 U.S. Dist. LEXIS 108220, *9-10 (D.P.R. 2006) (*quoting* <u>P.R. Oil Company, Inc.</u>, 2005 TSPR 41, 164 D.P.R. 486, 2005 Juris P.R. 47 (2005)).

Counter-Plaintiffs have not successfully alleged a claim meriting loss of goodwill damages. Island Fresh and Mayendía do not specify which cause of action they are using as a basis for their loss of goodwill claim. They merely assert that "[t]he deliberate actions taken by [Sun] to disparage Island Fresh and [...]Mayendía have caused severe damages to their goodwill and reputation." (Docket No. 54 at 34). Moreover, even supposing that Counter-Plaintiffs presented a cause of action, their claimed loss of goodwill is speculative and not concrete. They provide no basis for why Counter-Plaintiffs' alleged lost goodwill is worth the sought $5 million. In sum, the Court rejects Counter-Plaintiffs arguments under this count of the Counterclaim.

D.  <u>Compensatory Damages</u>

The "Fourth Cause of Action" in Counter-Plaintiffs Counterclaim is one for compensatory damages under Article 1802 of the Puerto Rico Civil Code of 1930.[2] Counter-Plaintiffs stress that Sun's actions have taken a serious toll on Mayendía's health and

---

[2] The Complaint in this case was filed on May 21, 2020, therefore the Puerto Rico Civil Code of 1930 was still in effect.

emotional well-being and thus he is entitled to $5 million in compensatory damages. Sun argues that compensatory damages are a remedy and not a cause of action and thus Island Fresh cannot succeed on this claim as a matter of law. The Court agrees. Compensatory damages, specifically for Mayendía's asserted physical and emotional injuries, are not a cause of action on which the Court can rule. Having concluded that Counter-Plaintiffs' collection of monies and tortious interference claims cannot withstand summary judgment, the Court need not further consider whether the Counter-Plaintiffs deserve compensatory damages under the Counterclaim.

E.    Attorney's Fees

Finally, Counter-Plaintiffs' Counterclaim's "Fifth Cause of Action" requests $200,000 in attorney's fees spent by Mayendía in defending Sun's claim which Counter-Plaintiffs characterize as unfounded. (Docket No. 54 at 34-35). In its response, Sun argues that attorney's fees are not a recognized cause of action. The Court declines to address this count of the Counterclaim given that it has determined that the Counter-Plaintiffs' substantive causes of action do not withstand Sun's Motion for Summary Judgment.

**Civil No. 20-1236(GMM)**
**Page -27-**

### V. CONCLUSION

For the foregoing reasons stated above, the Court **GRANTS** Sun's Motion for Summary Judgment and dismisses Counter-Plaintiffs' Counterclaim with prejudice.

IT IS SO ORDERED.

In San Juan, Puerto Rico, May 21, 2024.

s/Gina R. Méndez-Miró
GINA R. MÉNDEZ-MIRÓ
UNITED STATES DISTRICT JUDGE
